UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BY GEORGE, LLC,

    Plaintiff/Counter-Defendant,

vs.                                                  Case No. 8:10-CV-1894-T-27MAP

HURRICANE SHOOTERS, LLC,

    Defendant/Counter-Plaintiff.
_____/

## ORDER

**BEFORE THE COURT** is Plaintiff's Refiled Motion to Stay Defendant's Counterclaims (Dkt. 38).[1] Because the counterclaims fall outside the scope of the arbitration clause at issue, the Motion to Stay is due to be denied.

## Background

This lawsuit represents that latest in series of disputes between By George, LLC ("**By George**") and Hurricane Shooters, LLC ("**Hurricane Shooters**") involving the parties' respective rights to sell various types of plural chamber drinking cups,[2] including litigation and arbitration relating to the validity, enforceability and alleged infringement of various patents held by the parties.

In 2007, Hurricane Shooters sued By George for infringement of U.S. Patent No. 7,243,812 (the "**812 Patent**"). *See Hurricane Shooters, LLC v. McNaughton, Incorporated a/k/a McNaughton, Inc., et al.*, Case No. 8:07-cv-1914-T-RAL-TBM (M.D. Fla.) (the "**Prior Litigation**").[3] Hurricane

---

[1] The Court previously denied Plaintiff's Motion to Stay Defendant's Counterclaims (Dkt. 36) without prejudice for failure to comply with Local Rule 3.01(g).

[2] The cups, commonly referred to as "Bomber Cups," allow bartenders to serve two-part speciality drinks (*e.g.*, a shot of liquor and chaser) in a single cup, thereby avoiding the cost and safety concerns associated with the traditional practice of dropping a shot glass into a second container.

[3] Hurricane Shooters is also the holder of related U.S. Patent No. 7,523,840 (the "**840 Patent**").

Shooters and By George settled the Prior Litigation through a Settlement Agreement dated December 21, 2009 (the "**Settlement Agreement**").[4]

In addition to resolving the Prior Litigation, the Settlement Agreement granted By George a non-exclusive license (the "**License**") under the 812 Patent, including "all utility patents and applications claiming priority to the application(s) maturing into the '812 Patent, including continuations, continuations-in-part, divisionals and foreign patents" (hereinafter, the "**Licensed Patents**"). In return, By George agreed to pay Hurricane Shooters royalties on a quarterly basis for plural chamber drinking cups sold by By George, including those within the scope of the Licensed Patents. Pursuant to the express terms of the Settlement, By George also waived any future claim or right to contest the validity of the 812 Patent and 840 Patent.

The Settlement Agreement also contained a mechanism to resolve disputes if By George developed new cups which it believed were outside the scope of the Licensed Patents. If the parties disagreed whether a new cup fell within the scope of the Licensed Patents, the Settlement Agreement provided that either party *may* institute binding arbitration to resolve the dispute.

In or about March 2010, By George notified Hurricane Shooters of its intention to sell a new bomber-styled cup it believed fell outside the scope of the Licensed Patents (the "**First New Cup**"). Hurricane Shooters disagreed with By George's contention that the First New Cup fell outside the scope of the Licensed Patents and By George instituted binding arbitration before an independent arbitration tribunal designated by the parties ("**JAMS**").

Hurricane Shooters subsequently applied for and obtained U.S. Patent No. 7,780,033 (the "**033 Patent**"), issued on August 24, 2010, as a "continuation" of the 812 Patent. By George

---

[4] A redacted version of the Settlement Agreement is attached as Exhibit A to Defendant's Opposition to Plaintiff's Motion to Stay Defendant's Counterclaims (Dkt. 41).

commenced this action on August 26, 2010, filing a two count Complaint for Declaratory Judgment (Dkt. 1) seeking a declaration that the 033 Patent was invalid and/or unenforceable.

Shortly thereafter, By George introduced a second new cup it believed fell outside the scope of the Licensed Patents(the "**Second New Cup**"). The parties again disagreed as to whether the Second New Cup fell within the scope of the Licensed Patents and the dispute over the Second New Cup was joined with the arbitration relating to the First New Cup.

On December 7, 2010, U.S. Patent No. 7,845,512 (the "**512 Patent**") was issued to Theodore P. Skala and assigned to By George. Also on December 7, 2010, By George filed a First Amended Complaint for Declaratory Judgment and Patent Infringement (Dkt. 10) (the "**Amended Complaint**") reasserting its claims as to the invalidity/unenforceability of the 033 Patent and adding a claim for infringement of 512 Patent.

On or about March 3, 2011, the JAMS arbitration panel ruled that the First New Cup was subject to the royalty provisions of the License and Settlement Agreement. The panel also ruled that the Second New Cup was not within the scope of any existing patents held by Hurricane Shooters and, therefore, By George had no duty to pay royalties for sales of the Second New Cup.

Effective March 31, 2011, By George ceased making quarterly payments to Hurricane Shooters under the License based on its belief that Hurricane Shooters failed to meet its obligations under the Settlement Agreement.[5] Hurricane Shooters subsequently "terminated" the License by letter dated August 2, 2011.

---

[5] The parties dispute whether Hurricane Shooters complied with Section IV.F. of the Settlement Agreement which required Hurricane Shooters to institute patent infringement proceedings by the end of March 2011 against "parties associated with the distribution of thermoform plural chamber drinking cups bearing the Jagermeister brand" unless said parties had ceased active distribution in the United States or taken a license from Hurricane Shooters by the end of March 2011. A dispute arising under this provision is subject to *voluntary*, not binding, arbitration per the terms of the Settlement Agreement, § IV.F.

3

On or about September 13, 2011, Hurricane Shooters filed the pending Counterclaim (Dkt. 32) against By George asserting claims for (1) breach of the Settlement Agreement, (2) infringement of the 812 Patent, (3) infringement of the 033 Patent, (4) declaratory judgment of non-infringement of the 512 Patent, and (5) declaratory judgment of the invalidity of the 512 Patent.[6] In response, By George filed the pending Motion to Stay.[7]

## Discussion

By George argues that all of the pending counterclaims must be stayed pending arbitration of such claims pursuant to an arbitration clause in the Settlement Agreement. Specifically, By George contends that because all of Hurricane Shooters' claims purportedly stem from By George's failure to make payments under the License granted by the Settlement Agreement, such claims are subject to arbitration as "controversies and/or claims relating to the meaning, interpretation or application of the release or covenant not to sue provisions of [the Settlement Agreement]." Settlement Agreement, § VII.

While By George appears to contend that *all* of Hurricane Shooters' counterclaims are subject to binding arbitration, it is evident that only Hurricane Shooters' claims for breach of the non-exclusive license component of the Settlement Agreement and infringement of the 812 Patent could even conceivably be subject to mandatory arbitration. That is, if the Settlement Agreement were interpreted to require arbitration of Hurricane Shooters' counterclaim for infringement of the

---

[6] Hurricane Shooters had previously moved to dismiss Counts I and II of the Amended Complaint on the ground that the JAMS arbitration panel had previously ruled that the By George product purportedly spawning this litigation did not fall within the scope of the 033 Patent. *See* Dkt. 18. Thus, Hurricane Shooters argued that Counts I and II should be dismissed for lack of subject matter jurisdiction because there was no current case or controversy pending before the Court. *Id.* The Court denied the Motion to Dismiss by Order dated October 3, 2011 (Dkt. 33).

[7] By George also filed an answer and affirmative defenses to the Counterclaim together with a new "counterclaim" seeking a declaratory judgment that By George has not infringed the 812 Patent and/or that the 812 Patent is invalid.

4

033 Patent, then By George's claims seeking to declare the 033 Patent unenforceable or invalid also must fall within the scope of the mandatory arbitration provision in the Settlement Agreement. As a result, By George would have waived its right to compel arbitration under the Settlement Agreement by filing this action. *See Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315-16 (11th Cir. 2002).[8] Similarly, By George cannot reasonably contend that Hurricane Shooters' claims relating to non-infringement and invalidity of the 512 Patent are within the scope of the mandatory arbitration provision in the Settlement Agreement. *Cf. Beckman Instruments, Inc. v. Technical Development Corp.*, 433 F.2d 55, 62-63 (7th Cir. 1970) (noting that questions of patent validity are inappropriate for arbitration proceedings and should be decided by court of law, given the great public interest in challenging invalid patents).

While the Federal Arbitration Act ("**FAA**") requires a federal court to stay proceedings and compel arbitration with respect to "any issue referable to arbitration under" a written arbitration provision, *see* 9 U.S.C. §§ 2, 3, the Eleventh Circuit has recognized:

> The FAA does not "require parties to arbitrate when they have not agreed to do so, ... nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement." *American Express Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997) (quoting *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989)). The FAA creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude categories of claims from

---

[8] Indeed, if the Court were to accept By George's broad interpretation of the mandatory arbitration clause, it would be compelled to find that by filing this action By George waived its right to compel arbitration of any pending counterclaim. In the Amended Complaint, By George alleges that "Hurricane contends that By George's products are covered by the 033 [P]atent, and so By George is required to pay royalties under the Agreement regardless whether or not By George's products are covered by Hurricane's other patents. By George contends that the 033 [P]atent is invalid and/or unenforceable, and so By George cannot be obligated to pay royalties on that patent." Amended Complaint, ¶ 13. Because By George has acknowledged that the 033 Patent is a "continuation" of the 812 Patent, *see, e.g.*, Amended Complaint, ¶ 11, By George's claims relating to validity and enforceability of the 033 Patent directly impact the scope of the License.

> their arbitration agreement. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945, 115 S.Ct. 1920, 1924-25, 131 L.Ed.2d 985 (1995) (issues will be deemed arbitrable unless it is clear that the arbitration clause has not included them). Presumption notwithstanding, "the courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." *Goldberg v. Bear, Stearns & Co.*, 912 F.2d 1418, 1419-20 (11th Cir. 1990).

*Paladino v. Avnet Computer Tech., Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998). Thus, the issue before the Court is whether the parties intended to require arbitration of all claims relating to a breach of the License granted to By George as a component of the Settlement Agreement.

The Settlement Agreement contains several provisions relevant to whether Hurricane Shooters' claims are subject to mandatory arbitration:

- In the event that a dispute with respect to whether a new cup proposed by By George is within the scope of the Licensed Patents, "either party *may* submit the matter to binding arbitration as set forth in Section VII."

- "If a dispute arises between the parties as to the existence or effect of a Preferred License, either party *may* submit the issue to arbitration as set forth in Section VII."

- In the event the parties dispute whether Hurricane Shooters has diligently pursued patent infringements proceedings, "either party *may* institute arbitration pursuant to Section VII for a determination whether HURRICANE shall be obligated to take action to police the Licensed Patents ... ."

- "Any and all controversies and/or claims relating to the meaning, interpretation or application of *the release or covenant not to sue* provisions of this Agreement *shall* be resolved solely and exclusively by expedited arbitration ... ."

- "Each Party has cooperated in the drafting and preparation of this Agreement. Hence, this Agreement shall not be construed against any Party on the basis that the Party was the drafter."

6

Settlement Agreement, §§ IV.C., IV.D., IV.F., VII., X.B. (emphasis added). By its terms, the Settlement Agreement expressly limits the issues subject to mandatory binding arbitration to controversies and claims "relating to the meaning, interpretation or application of the release or covenant not to sue provisions of" the Settlement Agreement.

The sole basis for By George's contention that *any* claim relating to a breach of the License and royalty payment provisions of the Settlement Agreement must be arbitrated is the fact that under federal law a license is equated with a waiver of the right to sue by a patentee. *See DeForest Radio Tele. Co. v. United States*, 273 U.S. 236 (1927); *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749 (11th Cir. 1997); *In re CFLC, Inc.*, 89 F.3d 673, 677 (9th Cir. 1996). By George's attempt to equate a dispute over whether it breached the License with a claim relating to the "meaning, interpretation, or application of the release or covenant not to sue provisions of" the Settlement Agreement is unavailing and inconsistent with basic rules of contract interpretation. *See Cruz v. Revelex Corp.*, No. 1:10-cv-24264-PAS, 2011 WL 1930482, at *2 (S.D. Fla. May 19, 2011) ("[a]rbitration clauses are construed using basic contract interpretation principles").

A review of the Settlement Agreement reveals both "releases" and "covenants" not to sue that can properly be viewed as those that the parties intended to fall within the scope of the mandatory arbitration provision. Specifically, the Settlement Agreement contains:

- A mutual release of, and a covenant not to sue with respect to, any or all claims "arising out of or relating to: 1) any *past* infringement of the '812 patent or '840 patent; 2) any and all claims, affirmative defenses and counterclaims that were asserted or could have been asserted in the [Prior Litigation]; 3) any future claim that could otherwise be brought challenging the validity of the '812 or '840 Patents."

- A covenant not to sue whereby "By George *covenants* that it will not challenge the validity of the Licensed Patents. This shall include, but not be limited to, By George warranting – in

7

> conformity with the *release* granted to Hurricane herein – that it will not pursue either directly or indirectly a declaratory judgment action or any other litigation seeking to invalidate one or more claims of the Licensed Patents on any grounds known to By George at the time of the execution of this Settlement Agreement including but not limited to any grounds previously asserted in the Lawsuit."

Settlement Agreement, §§ II, VI.B. (emphasis added). These are the only provisions in the Settlement Agreement that by their express terms constitute a "release" or "covenant" not to sue as necessary to fall within the plaining language of the mandatory arbitration provision. *See, e.g.*, *Cruz*, 2011 WL 1930482, at *2 ("the plain language of the arbitration agreement is the best evidence of the parties' intent") (citing *BallenIsles Country Club, Inc. v. Dexter Realty*, 24 So.3d 649, 652 (Fla. 4th DCA 2009)).

Despite the plain language in the Settlement Agreement, By George argues that the mandatory arbitration provision should be read to apply to *any* claim relating to the License (including a claim to enforce By George's obligation to pay royalties in return for being allowed to sell products infringing on the 812 Patent) solely because at least three courts have recognized that a license is, in essence, a waiver of the right to sue for infringement. In this case, however, the parties clearly contemplated that the License would consist of something more than a simple waiver of the right to sue (*i.e.*, the Settlement Agreement granted By George a non-exclusive right to use the Licensed Patents in exchange for the payment of regular royalties).

Moreover, the Settlement Agreement is best viewed as two separate agreements (*i.e.*, a Release and Covenant Not to Sue resolving the Prior Litigation and the License governing the parties' relationship going forward). In fact, the Settlement Agreement expressly provides that disputes relating to the scope of the License (*i.e.*, whether a new product marketed by By George would fall within the scope of the Licensed Patents as to require payments under the License) were

subject to *voluntary*, not mandatory, arbitration. Settlement Agreement, § IV.C.[9] Construing the mandatory arbitration clause to include *any* dispute relating to the License would make the separate provision *allowing* either party to commence arbitration superfluous. *See, e.g., BallenIsles Country Club, Inc.*, 24 So.3d at 652 (noting that arbitration clause must be read together with the other provisions of the contract); *Premier Ins. Co. v. Adams*, 632 So.2d 1054, 1057 (Fla. 5th DCA 1994) (recognizing that an interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable).

## Conclusion

The plain language of the Settlement Agreement demonstrates a clear intent by the parties to exclude claims relating to the License from the narrowly defined category of disputes subject to mandatory arbitration. *See First Options of Chicago, Inc.*, 514 U.S. at 945. As a result, Hurricane Shooters' counterclaims are not subject to mandatory arbitration.

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Refiled Motion to Stay Defendant's Counterclaims (Dkt. 38) is **DENIED**.

**DONE AND ORDERED** in chambers this 9th day of January, 2012.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record

---

[9] Similarly, the resolution of whether By George was justified in refusing to pay royalties (*i.e.*, the event that spawned Hurricane Shooters' claim for breach of contract) based on Hurricane Shooters' purported failure to adequately police the Licensed Patents is subject to *voluntary*, not binding, arbitration per the terms of the Settlement Agreement. *See* Settlement Agreement, § IV.F.